## LORILLARD and others *v.* WIGHT.

*(Circuit Court, D. Maryland. February 21, 1883.)*

**1. TRADE-MARK—COLORED TIN DEVICES.**

Where complainants were the first to adopt and use as a mark for their product tin tags variously colored, with the name of their brand and their own name stamped thereon and fastened upon the outside of their plugs of tobacco, although their patent therefor was declared void after surrender and reissue, they had the right to the device as a trade-mark, the public having come to know their tobacco by the tags of their peculiar color, shape, and size.

**2. SAME—INFRINGEMENT.**

Where defendants use tin tags which are a close imitation of the tags of complainant,—so close an imitation that they are calculated to mislead the retail purchaser, whether so intended or not,—it is an infringement of complainants' trade-mark, and such use may be enjoined.

In Equity. Motion for injunction.

*Cowen & Cross,* for complainants.

*Charles Marshall,* for respondent.

Before BOND and MORRIS, JJ.

BOND, J. This bill alleges that the complainants are largely engaged in the manufacture and sale of plug tobacco; that it frequently occurred, after a box of tobacco sold by them was emptied, the dealer would refill it with other tobacco not of complainants manufacture, and by means of the labels and trade marks on the box, sell it for tobacco of complainants. That to prevent this fraudulent practice the complainants invented a disk of tin, upon which was stamped their name and the names of the brand of tobacco, placed it upon each plug of tobacco in a box, and varied the colors of the disks so as further to distinguish to the eye the brands, and sold their product and advertised it as red tin tag or blue tin tag tobacco. The device in the present suit complainants allege they first adopted about August, 1879. At one time they placed the tag beneath the last covering or skin of the tobacco, where it would be held firmly and show through the surface. For this process they obtained a patent, which afterwards they surrendered and obtained a reissue, which was subsequently declared void, because it embraced more than the original patent. But the bill alleges that they had constantly used the device of a colored tin tag, with their name and the brand of the tobacco stamped upon it, placed upon the outside of the plug as a trade-mark in order to show a purchaser at retail that each plug of tobacco purchased by him was of the Lorillard manufacture. The complainants allege further that having advertised their tobacco largely as "red tin tag," "blue tin tag," "green tin tag" tobacco, it is known generally by those names to consumers, who ask for it at the shops by those appellations and know that they get Lorillard tobacco when they see the "red tin tag" or "blue tin tag" upon each plug. The defendant, who alleges himself to be a broker and not a manufacturer of tobacco, denies that complainants have any trade-mark, but alleges that the use of tags to distinguish the grade and quality of many manufactured articles has long been practiced, and that even if the complainants had such a trade-mark defendant has not infringed it, because those whom he represents as broker make tobacco of such different sizes and colors, and use tags with names of brands so different from complainants', that no one would mistake the one for the other.

We think the evidence shows that the Lorillards were the first to adopt and use as a mark for their product the tin tags variously colored with the name of the brand and their own name stamped thereon

and fastened upon the outside of plugs of tobacco; that while their patent for fastening these tags on the tobacco was declared void after surrender and reissue, they clearly had the right to the device as a trade-mark, the public having come to know their tobacco by its having on it tin tags of a peculiar color, shape, and size.

This being so, a glance at the device used by the defendant, or those whom he represents as broker, is clearly an imitation of the Lorillard device, or the Lorillards' is an imitation of it. To be sure, the little disk of tin upon the tobacco sold by defendant has upon it different names for the brand, and has not Lorillard's name. But the words are in such small letters that no one without the closest inspection would distinguish the difference. But they are of the same size and shape, of precisely the same color and enamel finish, and the minute letters on them are made with same colored ink.

The proof shows that the complainants have for a long time, and very extensively, advertised their tobacco as "red tin tag" or "blue tin tag" plug tobacco. It may not be sold to jobbers always as such; but it is so inquired for by and sold to the consumer.

The purchasing public, notwithstanding the size of the plugs of tobacco sold by defendant, and their color and flavor, may differ from the size and color and flavor of Lorillard's plug tobacco, would be deceived by the color of the tag and its resemblance to that of complainants', and think the red-tag tobacco of the one is the red-tag tobacco of the other. The defendant contends that the shape and flavor of the plug sold by him will advise the retail purchaser of the manufacturer. But one seldom determines the manufacture by the size of the piece the dealer gives him for his money, and he cannot taste the tobacco till after he has bought it. Besides, if the size and flavor of the plugs will show the purchasing public they are buying the defendant's or his principal's tobacco, why should he use a tag of any color to distinguish it. For some reason the tags closely resembling those in use by complainants are placed upon the article sold by him, when, as he claims, the public would know his manufacture by the label on the box, the size and shape of the plug, and its flavor.

We think the Lorillards were the first to adopt this method of distinguishing the grade and quality of manufactured plug tobacco; that they have a trade-mark; that the defendant's tin tags are a close imitation of it—so close that they are highly calculated to mislead and do mislead the retail purchaser, whether it is so intended or

not; and that he should be restrained from selling tobacco having such imitated devices. The defendant has the right to use tin tags, but they must be of such size, shape, and color as will not mislead the public.

An order will be passed in accordance with this opinion.

MORRIS, J., concurred.